UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRATERNAL ORDER OF POLICE )
*et al.*, )
        Plaintiffs, )
)
     v. )  Civil Case No. 08-0039 (RJL)
)
ROBERT M. GATES, )
)
        Defendant. )
)

MEMORANDUM OPINION
(March _12_, 2009) [#12]

Plaintiffs Fraternal Order of Police, D.C. Lodge 1, NDW Labor Committee, Inc.; Fraternal Order of Police, First Federal Lodge 1-F; Joseph Barbetta; Anthony Anzideo; and James W. Waters, individually and on behalf of all other similarly situated police officers, brought this action against defendant Robert M. Gates, in his official capacity as Secretary of the Department of Defense. Plaintiffs allege that defendant's policy allowing use of a direct-impact spray of oleoresin capsicum ("OC"), also known as pepper spray, in its non-lethal weapons training program must be set aside as unlawful under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2). The Court finds that the plaintiffs have failed to state a claim upon which relief can be granted, and therefore GRANTS defendant's motion to dismiss.

## BACKGROUND

Plaintiffs, Navy civilian police officers employed by the Department of Defense ("DoD") and the labor organizations that represent them, (Compl. ¶¶ 6-10), object to the Navy's use of pepper spray in its non-lethal weapons training program. Specifically, the officers object to "Level I" training, which involves a direct spray into the faces of trainees. (Compl. ¶ 27; Compl. at 11.) The complaint does not point to a specific document that provides the details of this program, but plaintiffs refer to two agency directives which allegedly authorize the use of OC spray to train civilian police officers. (Compl. ¶¶ 23-26.)

On July 9, 1996, the DoD issued Directive 3000.3, "Policy for Non-Lethal Weapons," which applied to all military departments and set forth policy regarding the development and employment of non-lethal weapons. DoD Directive Number 3000.3 (Jul. 9, 1996). Pursuant to that directive, the Defense Department implemented a training program that included exposure to OC spray. (Compl. ¶ 24.) In January 2007, the Department of the Navy issued Chief of Naval Operations Instruction 5530.14D ("OPNAVINST 5530.14D"), which approved use of non-lethal weapons training for civilian police officers employed by the Navy. (Compl. ¶ 25.) The Navy instruction does not lay out a specific training program involving the use of pepper spray, and states only, "[L]aw enforcement personnel for the performance of law enforcement activities may use OC spray . . . [i]n training." OPNAVINST 5530.14D, § 1304(p)(6) (Jan. 30, 2007).

The Navy training program consists of three levels. (Compl. ¶ 27.) In Level I, trainees are subjected to a direct facial spray of OC. (*Id.*) Levels II and III involve

2

different methods of non-impact exposure to OC, such as smearing OC beneath the eyes of a trainee. (*Id.*) In this lawsuit, plaintiffs challenge the Level I training program, claiming it could result in numerous harms, such as pain, swelling, redness, blistering, allergic reactions, cyanosis or respiratory arrest. (Compl. ¶ 31.)

Plaintiffs ask the Court to hold the Level I training program unlawful under the APA and set it aside. (Compl. ¶¶ 34-49.) Defendant moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), alleging, among other things, that plaintiffs failed to state a claim upon which relief can be granted. For the following reasons, the Court agrees and dismisses the complaint.[1]

## LEGAL STANDARD

Under Rule 12(b)(6), dismissal of a complaint is appropriate when a plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Although "detailed factual allegations" are not necessary to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). The factual allegations in the complaint must be enough "to raise a right to relief above the speculative level . . . on the assumption that all the allegations of the complaint are true (even if doubtful in fact)." *Id.* at 1965.

The complaint "is construed liberally in the plaintiffs' favor, and [the Court should] grant plaintiffs the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

---

[1] The Court has analyzed defendant's arguments that the complaint must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction and found them to be without merit.

3

However, the court need not accept as true "legal conclusions cast in the form of factual allegations." *Id.*; *see also McManus v. District of Columbia*, 530 F. Supp. 2d 46, 64 (D.D.C. 2007).[2]

## ANALYSIS

If an agency has taken a final action, a court may set it aside if it is, among other things: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) contrary to constitutional right, power, privilege, or immunity; or (3) in excess of statutory jurisdiction, authority, or limitations. 5 U.S.C. § 706(2)(A)-(C). Plaintiffs argue the Court must set aside the agency action under all three provisions.

However, to properly state a claim for relief under the APA, plaintiffs must first identify the final agency action being challenged. 5 U.S.C. § 704 (judicial review is limited to agency action made reviewable by statute and "final agency action for which there is no other adequate remedy in court."). In this case, plaintiffs are less than clear as to which agency action is at issue. The complaint references DoD Directive 3000.3 and OPNAVINST 5530.14D, which approve non-lethal weapons training generally, (Compl. ¶¶ 23-26), but do not specifically authorize the Level I training to which plaintiffs object. Because plaintiffs do not connect the Level I training to the language of the DoD and Navy documents, the Court is left to guess which of these agency actions – or what aspects of the actions – is being challenged by the plaintiffs. This deficiency alone is

---

[2] In deciding this motion, the Court can consider materials outside the complaint, such as DoD Directive 3000.3 and OPNAVINST 5530.14D, without converting the motion to one for summary judgment because these documents are incorporated into the complaint and are central to the plaintiffs' claims. *See Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 110 (D.D.C. 2002).

4

sufficient for the Court to conclude that the factual allegations do not "raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1965.

Further reason for dismissal exists, however, because, as outlined below, plaintiffs have failed to state a claim upon which relief can be granted for any of the three APA provisions upon which they rely.

### I. Arbitrary and Capricious

Agency action is entitled to a "presumption of regularity," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), and, accordingly, the scope of review under the arbitrary and capricious standard "is narrow and a court is not to substitute its judgment for that of the agency." *Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). In making the arbitrary and capricious inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (quoting *Volpe*, 401 U.S. at 416); *Karst Envtl. Educ. and Prot., Inc. v. U.S. Envtl. Prot. Agency*, 403 F. Supp. 2d 74, 79 (D.D.C. 2005). An action will usually be arbitrary and capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43.

Plaintiffs argue that "creating an unreasonable risk of injury and/or death and/or inflicting severe psychological and emotional injury to the plaintiffs" qualifies on its face as arbitrary and capricious. (Compl. ¶ 47.) However, this conclusory statement sheds no light on any of the criteria established by the Supreme Court. A simple description of the risks of harm from OC spray does not demonstrate, for example, agency reliance "on factors which Congress had not intended it to consider" or agency "fail[ure] to consider an important aspect of the problem." *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43.

The use of direct-impact OC spray indisputably risks injury, but the agency decided that this risk was offset by the benefits of training. Plaintiffs' allegation that the action was "clearly not the product of reasoned thought," Pl. Opp. at 19, is little more than a legal conclusion and provides insufficient support for its claim that the agency decision was arbitrary and capricious. Without more, this cause of action must be dismissed.

## II. Contrary to Constitutional Right

Plaintiffs further allege that defendant violated the Constitution, specifically their rights under the due process and equal protection clauses. (Compl. ¶¶ 34-45.) These claims, too, are without merit.

### A. *Substantive Due Process*

The threshold question for a substantive due process claim challenging executive action is whether "the behavior of the government officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento*

*v. Lewis*, 523 U.S. 833, 847 n.8 (1998). To determine whether government action shocks the conscience, courts look to factors such as

> the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Norris v. District of Columbia*, 737 F.2d 1148, 1150 (D.C. Cir. 1984); *Feirson v. District of Columbia*, 315 F. Supp. 2d 52, 61 (D.D.C. 2004).

The first three factors are, at best, inconclusive, but the final factor weighs heavily in favor of defendant. Plaintiffs nowhere allege that defendant harbored a malicious or sadistic intent to injure plaintiffs. In similar circumstances, a district court held that a police officer who sustained severe injuries during a mandatory combat training exercise did not endure behavior that "shocked the conscience" because there was no intent to injure and the police department "had an important interest in training its officers to use the tools and weapons with which they are equipped." *Feirson*, 315 F. Supp. 2d at 62-63. The Navy also has an important interest in training its officers to use the tools and weapons with which they are equipped, such as pepper spray. While a direct impact spray may "result in serious and/or potentially fatal harm to the plaintiffs," (Compl. ¶ 37), that, *alone*, is not enough to shock the conscience in this context. Therefore, plaintiffs' substantive due process claim must be dismissed.

### B. *Procedural Due Process*

Plaintiffs' procedural due process claim is also infirm because plaintiffs fail to identify what process, if any, is due. *See Doe v. District of Columbia*, 93 F.3d 861, 868 (D.C. Cir. 1996) (by framing a claim as one of procedural due process, plaintiff "necessarily presents the question of what, if any, additional process is due."); *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 73 (D.D.C. 2007) (motion to dismiss procedural due process claim granted when plaintiffs did not identify the specific procedural safeguards to which they were entitled, but failed to receive). Plaintiffs state only that they were subject to direct impact spraying "without due process of law." (Compl. ¶ 43.) A general citation to the Fifth Amendment is not a specific "process" due. Therefore, plaintiffs have failed to state a due process claim upon which relief can be granted.

### C. *Equal Protection*

Plaintiffs' equal protection claim is equally devoid of substance. Plaintiffs have not alleged that they were members of a protected class or that they were treated differently from other similarly situated individuals; without such allegations, an equal protection claim must fail. *See Forrester v. Fed. Bureau of Prisons*, No. 06-1945, 2007 WL 2616916, at *2 (D.D.C. Sept. 12, 2007). Indeed, plaintiffs may realize the futility of this claim, as they did not even address it in their opposition papers and have therefore, in essence, conceded it. *Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.D.C. 2002).

Because plaintiffs have failed to state a violation of either the due process or equal protection clauses, there is no basis for this Court to set aside the agency action as contrary to constitutional right, and these claims must be dismissed.

### III. Excess of Statutory Authority

Finally, plaintiffs have failed to identify sufficient facts to support their claim that defendant's actions are in excess of its statutory jurisdiction, authority, or limitations. At best, plaintiffs provide a conclusory statement that direct impact spraying "creat[es] an unreasonable risk of injury," Compl. ¶ 49, and utterly fail to address how the promulgation of the training program at issue exceeds the authority Congress gave to the Secretary of the Navy, subject to the authority, direction and control of the Secretary of Defense, to conduct "all affairs of the Department of the Navy," including training. 10 U.S.C. § 5013(b)(5). Therefore, plaintiffs have not stated a claim upon which relief can be granted under this theory of judicial review.

### CONCLUSION

Thus, for all of the foregoing reasons, defendant's motion to dismiss is GRANTED.

_____
RICHARD J. LEON
United States District Judge